UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MELINDA SANTOS,

                Plaintiff,

-vs-

CHRITOPHER J. BARBER, CITY OF ROCHESTER, ROCHESTER POLICE DEPARTMENT, and MICHAEL CIMINELLI,

                Defendants.

DECISION AND ORDER

17-CV-6475-CJS

## APPEARANCES

For Plaintiff:      David Stern, Esq.
Elliott, Stern & Calabrese, LLP
One East Main Street
Rochester, New York 14614
Tel: (585) 232-4724

For the Defendants:      Patrick Beath, Esq.
City of Rochester
30 Church Street, Suite 400A
Rochester, New York 14614
Tel: (585) 428-6812

## INTRODUCTION

**Siragusa, J.** This civil rights case alleging, *inter alia*, excessive force by the arresting officer, is before the Court on the defendants' motion seeking partial dismissal of the complaint. For the reasons stated below, the defendants' application, ECF No. 2, is granted.

## BACKGROUND

During the very early morning hours of May 8, 2016, Melinda Santos ("Santos") was on Gregory Street in Rochester, New York. She had been attacked and was sitting on the ground. Rochester city police officer Christopher J. Barber ("Barber") responded, and Santos alleges that he grabbed her shoulder and back side, lifted her in the air above his waist,

violently swung her counterclockwise, and slammed her face down onto the concrete sidewalk. She further states that Barber then dropped down on top of her kneeing her in her lower back and forcefully pulled her arms around her back and handcuffed her. She claims Barber did this without any justification, since she had not engaged in any unlawful activity. Compl. ¶¶ 16-17. Santos heard her neck crack as her body landed on the hard concrete pavement, and, as a result, she suffered breaks to her third and fourth vertebrae requiring surgery to internally fix and fuse the vertebrae. Compl. ¶ 25. Santos further contends that Barber filed a false accusatory information charging her with disorderly conduct in order to shield himself from liability, embarrassment, charges of misconduct, and in an attempt to mislead the prosecutor. Compl. ¶ 27- 28.

Santos filed a verified complaint (the "Complaint") in New York State Supreme Court, Monroe County, on May 8, 2017, which the defendants have removed to this Court. The Complaint lists 11 causes of action alleging: (1) police brutality in violation of 42 U.S.C. § 1983; (2) false imprisonment in violation of 42 U.S.C. § 1983; (3) a *Monell*[1] claim against the city of Rochester, Rochester Police Department, and Chief of Police Michael Ciminelli pursuant to 42 U.S.C. § 1983; (4) violation of Santos' right to equal protection under article I, section 11 of the New York State Constitution; (5) assault and battery; (6) false arrest and imprisonment; (7) negligence; (8) negligent hiring; (9) punitive damages; (10) intentional infliction of emotional distress; (11) prima facie tort.

The defendants, all represented by the Corporation Counsel, have moved to dismiss the following causes of action: (3) a *Monell* claim against the City of Rochester, Rochester Police Department, and Chief of Police Michael Ciminelli pursuant to 42 U.S.C. § 1983;

---

[1] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

(4) violation of Santos' right to equal protection under article I, section 11 of the New York State Constitution; (7) negligence; (8) negligent hiring; (9) punitive damages; (10) intentional infliction of emotional distress; (11) prima facie tort.

## STANDARDS OF LAW

*Motion to Dismiss*

The general legal principles concerning motions under Rule 12(b)(6) are well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (*quoting Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks

omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). "The application of this 'plausibility' standard to particular cases is 'context-specific,' and requires assessing the allegations of the complaint as a whole." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (citation and internal quotation marks omitted).[2]

*Section 1983 Liability*

Section 1982 of Title 42, U.S. Code, permits a plaintiff to bring a suit against a person acting under color of state law who violates the plaintiff's rights under the Constitution. A claim under § 1983 has two elements: first, that the individual tortfeasor acted under color of state law, and second, that the tortfeasor's actions deprived the plaintiff of her rights under a federal statute or the Constitution.

In this case, Santos alleges excessive force and false imprisonment in violation of her constitutional rights. Since she was not, at the time of the incident, a prisoner, the applicable constitutional provision is the Fourth Amendment which prohibits unreasonable seizure and unreasonable force to effect an arrest. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989).

ANALYSIS

*Third Cause of Action —* Monell *Claim*

Municipalities are only liable for their own constitutional violations. The doctrines of *respondeat superior* and vicarious liability do not apply to impute acts by an agent to a

---

[2] Plaintiff's memorandum of law at 8, Sept. 24, 2017, ECF No. 8, erroneously states the following standard: "The District Court should deny the motion unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief. *Id*. at 779, citing *Conley v. Gibson,* [355 U.S. 41 at] 45-46 (1957)." That standard was overruled 10 years ago. "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

municipality. *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658 (1978). However, a city police officer's misdeeds can be imputed to the municipality or the chief of police if the plaintiff shows that the police officer acted in accord with a governmental policy or custom. A municipality that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" can be sued for a depravation of constitutional rights. *Monell*, 436 U.S. at 690.

Here, Santos has alleged that the municipal defendants were on notice of Barber's constitutional violation, since they ignored several prior incidents of the use of excessive force by officers of the Rochester Police Department. Santos argues that the municipality's failure to train Barber resulted in the injuries to her. Paragraph 61 of the complaint states: "unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the CITY…." Compl. ¶ 61.

Santos cites three cases filed in this Court as proof that the municipality was on notice of the need to train on constitutional rights. The first is *Libbett v. City of Rochester*, No. 12-CV-6697L (W.D.N.Y. Dec. 9, 2015), which was discontinued by stipulation of the parties. The second is *Warr v. City of Rochester*, No. 13-CV-6508-EAW (W.D.N.Y. Sept. 5, 2017). The Honorable Elizabeth A. Wolford issued a decision in that case on the defendants' motion for summary judgment in which she addressed Warr's *Monell* claim. Judge Wolford determined that Warr failed to support his claim and granted judgment to the defendants. *Warr v. Liberatore*, 2017 U.S. Dist. LEXIS 143175, at *25 (W.D.N.Y. Sep. 5, 2017) ("based on the information before the Court, there is no foundation for any opinion regarding prior complaints."). The third case Santos cites is *Turner v. City of Rochester*, No. 11-CV-6200-DGL-

MWP (W.D.N.Y. Jul. 1, 2014). That case was discontinued by the plaintiff pursuant to a stipulation signed with the defendants.

The Court must first address Santos' contention, mentioned in the seventh paragraph of her counsel's "Answering Affidavit," Sept. 24, 2017, ECF No. 7, that "Defendants are challenging factual allegations raised in Plaintiff's complaint and thereby attempting to seek summary judgment," and requesting that the Court permit discovery before adjudicating the motion to dismiss. The Court does not read Defendants' arguments as raising factual issues. However, to the extent that Defendants' arguments could be read to challenge the complaint's allegations by raising issues of fact, the Court will disregard those arguments and proceed under the standard of review for a Rule 12(b)(6) motion, as outlined above.

Santos is relying on the municipality's deliberate indifference to allegations of abuse contained in three complaints filed in district court as a means of imputing knowledge that Rochester Police officers are committing constitutional violations. The Supreme Court has written that "practices so persistent and widespread as to practically have the force of law," can impute liability to the municipality. *Connick*, 563 U.S. at 61. However, in the same opinion, the Court also cautioned that "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" to demonstrate deliberate indifference for purposes of failure to train. *Id*. at 62. The violations alleged in *Connick* consisted of four convictions overturned during ten years due to *Brady*[3] violations, which the Supreme Court found insufficient to put the Orleans Parish District Attorney's Office on notice that its *Brady* training was inadequate. *Id*. The Supreme Court reasoned that,

> None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind. Because those incidents are not similar to the violation at issue here, they could not have put Connick

---

[3] *Brady v. Maryland,* 373 U.S. 83 (1963).

6

on notice that specific training was necessary to avoid this constitutional violation.

*Connick*, 563 U.S. at 62–63.

In the three cases cited by Santos, two involve only allegations that were never adjudicated. The *Monell* allegations in the case pending before Judge Wolford were unproven and, as a result, the defendants obtained judgment. Further, the remaining allegations in that case have not yet been adjudicated, so they remain only allegations. Santos has not alleged that any of the three cases involved Barber. Such allegations fail "to set forth sufficient factual material to support a reasonable inference" that Santos' injuries resulted from the city's, the police department's, or the chief of police's failure to train police officers. *Simms v. City of New York*, 480 Fed. Appx. 627, 631 (2d Cir. 2012). Therefore, Defendants City of Rochester, Rochester Police Department, and Chief of Police Michael Ciminelli are entitled to judgment on the third cause of action.

*Fourth Cause of Action — Violation of Santos Right to Equal Protection under Article I, Section 11 of the New York State Constitution*

In *Brown v. State of New York*, 89 N.Y.2d 172 (1996), the New York State Court of Appeals addressed the constitutional provision invoked by Santos. "Article I, § 11 prohibits discrimination by 'any … person or by any firm, corporation, or institution, or by the state.'" *Brown v. State*, 89 N.Y.2d 172, 183 (1996). Article I, section 11 is self-executing. However, that does not always mean that is supports a lawsuit for damages. *Id*.

> Section 11 is divided into two parts. The first sentence directs that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof." The provision was intended to afford coverage as broad as that provided by the Fourteenth Amendment to the United States Constitution (*see*, *Dorsey v. Stuyvesant Town Corp.,* 299 N.Y. 512, 530; 2 Rev Record of NY State Constitutional Convention, 1938, at 1065). The section imposes a clear duty on the State and its subdivisions to ensure that all persons in the same circumstances receive the same treatment (*see*, *Davis v. Passman, supra* [implying a Federal cause of action based on the Fifth Amendment for denial of

equal protection]).

*Brown v. State*, 89 N.Y.2d 172, 190, 652 N.Y.S.2d 223, 234, 674 N.E.2d 1129, 1139 (1996).

However, the majority of courts that have adjudicated whether to allow an imputed state constitutional claim go forward have determined that the cause of action created in *Brown* is not applicable where another tort remedy will address the same issue. For example, the New York Court of Claims determined that "if the common-law remedy vindicates the right protected by the constitutional provision, the need for implying a damage remedy does not exist."*Remley v. State*, 174 Misc. 2d 523, 527 (N.Y. Ct. Cl. 1997). In addition, the district court in *Wahad v. FBI*, 994 F. Supp. 237 (S.D.N.Y. 1998) analyzed the *Brown* decision in detail and held:

> Unlike *Brown* where the plaintiffs had no remedy against the State, Plaintiff has stated a viable Section 1983 claim against the Municipal Defendants for the alleged due process violations. Plaintiff's due process claims, therefore, have means for redress. Accordingly, the existence of alternative damage remedies under Section 1983 obviates the need to imply a private right of action under the State Due Process Clause. *See, e.g., Remley v. State*, 174 Misc. 2d 523, 665 N.Y.S.2d 1005, 1009 (Ct. Cl. 1997) (refusing to imply private right of action for violations of State Due Process Clause under *Brown* analysis because plaintiff had alternative remedies under state tort law); *Taylor v. State of Rhode Island*, 726 F. Supp. 895, 901 (D.R.I. 1989) (dismissing claim for damages under equal protection clause of Rhode Island State Constitution where plaintiff had alternative remedy under Title VII to address his employment grievance); *cf. Turpin v. Mailet*, 591 F.2d 426 (2d Cir. 1979) (*en banc*) (refusing to imply *Bivens* action under federal constitution where plaintiffs had remedy under Section 1983). Because the State Due Process Clause claim would not survive a motion to dismiss, the Court denies Plaintiff's request to amend his complaint in order to add this futile claim.

*Wahad*, 994 F. Supp. at 240. The weight of persuasive authority favors dismissal of Santos' state constitutional claim. Moreover, Santos has failed to plausibly plead an equal protection claim. She does not allege she is in a protected class, nor does she sufficiently allege a "class of one" equal protection claim. *See Prestopnik v. Whelan*, 249 F. App'x 210, 213 (2d Cir. 2007) ("To prevail on a 'class of one' equal protection claim, the plaintiff 'must demonstrate

that [she was] treated differently than someone who is *prima facie* identical in all relevant respects.'" *Neilson*, 409 F.3d at 104 (quoting *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002))). In her responding papers, Santos consents to the dismissal of this claim. Therefore, Defendants are entitled to judgment on the fourth cause of action.

*Seventh Cause of Action — Negligence*

Santos argues in her memorandum of law that, "[t]he conduct of Officer Barber suggests either an intentional act or reckless assault or negligence." Pl.'s Mem. of Law at 4.[4] Santos' allegations support a claim that Barber's touching was intentional, not negligent: Barber "grabbed Plaintiff's shoulder and backside, lifted her in the air above his waist, violently swung her counter clockwise and slammed her face down onto the concrete sidewalk...." Compl. ¶ 16. "New York has adopted the prevailing modern view that, once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently." *Mazzaferro v. Albany Motel Enters., Inc.*, 127 A.D.2d 374, 376 (N.Y. App. Div. 3rd Dep't 1987); *accord Universal Calvary Church v. City of N.Y.*, No. 96 Civ. 4606 (RPP) and related Group A-1 cases: 1. Brian Abraham 99 Civ. 12211, 2. Michael Bennett 99 Civ. 9228, 2000 U.S. Dist. LEXIS 15153, at *49 (S.D.N.Y. Oct. 13, 2000). Consequently, this cause of action must be dismissed.

*Eighth Cause of Action — Negligent Hiring*

Barber argues that this claim should fail since he was acting in the scope of his employment. Def.'s Mem. of Law 8. Under New York law,

> Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by

---

[4] The pages of Santos' memorandum of law are not numbered, therefore, the Court will refer to the page numbers assigned by the Court's case management and electronic case filing ("CM/ECF") system.

9

> the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention *Eifert v. Bush*, 27 AD2d 950, aff'd 22 N.Y.2d 681).

*Karoon v. N.Y.C. Transit Auth.*, 241 A.D.2d 323, 324 (N.Y. App. Div. 1st Dep't 1997).

Plaintiff responds that she did *not* allege he was acting within the scope of his employment. Pl.'s Mem. of Law 13. The Court finds the denial a bit disingenuous. Throughout her complaint, Santos essentially alleges that Barber was acting in the scope of his employment at all times. Compl. ¶¶ 15 ("[a]t all time relevant herein, [Barber] … was acting in the capacity of agent, servant, and employee of the City"); 19 ("Barber…was employed and acting in furtherance of his employment with the City and RPD…"); 38 ("Barber under the color of law and within the scope of [his] authority…"); 39 ("Barber acting under color of law and within his authority as law [sic] a law enforcement officer…"); and 54 ("each of the Defendants, acting under color of law and within the scope of their authority…"). Accordingly, this claim is dismissed.

### *Ninth Cause of Action — Punitive Damages*

Santos candidly concedes that New York law precludes her claim of punitive damages. Pl.'s Mem. of Law 14; *Clark-Fitzpatrick, Inc. v Long Island R. Co.*, 10 N.Y.2d 382, 386 (1987). This claim, therefore, is dismissed with regard to the municipal defendants, but not with respect to Barber individually.

### *Tenth Cause of Action — Intentional Infliction of Emotional Distress*

Santos likewise concedes that public policy bars a claim of intentional infliction of emotional distress against municipal defendants. Pl.'s Mem. of Law 15. She argues, however, that dismissal against Barber individually would be premature. *Id*. at 16.

However, New York law appears to favor dismissal of intentional infliction of emotional distress claims where the tortfeasor's acts allegedly fall within traditional tort liability. *Fischer*

*v. Maloney*, 43 N.Y.2d 553, 557–58 (1978) (dismissing claim for intentional infliction of emotional distress and writing, "[i]ndeed, it may be questioned whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability, here malicious prosecution and abuse of process."); *Baliva v. State Farm Mut. Auto. Ins. Co.*, 286 A.D.2d 953, 954 (N.Y. App. Div. 4th Dep't 2001) ("such a cause of action does not lie where, as here, ''the conduct complained of *falls well within* the ambit of other traditional tort liability' [emphasis supplied]' ( *Sweeney v. Prisoners' Legal Servs*., 146 A.D.2d 1, 7, *lv dismissed* 74 N.Y.2d 842, quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 558; *see, McIntyre v. Manhattan Ford, Lincoln-Mercury*, 256 A.D.2d 269, 270, *appeal dismissed* 93 NY2d 919, *lv denied* 94 N.Y.2d 753; *see also, Rozanski v Fitch*, 113 A.D.2d 1010; *cf., Murphy v. ERA United Realty*, 251 A.D.2d 469, 473–474)").

Santos cites to *Eckardt v. City of White Plains*, 87 A.D.2d 1049 (N.Y. App. Div. 2nd Dep't 2011) in which the appellate court held that despite dismissing a claim of intentional infliction of emotional distress claim against a municipal defendant, "appellants failed to make a prima facie showing of Officer Aragon's entitlement to summary judgment dismissing this cause of action insofar as asserted against him." *Id*. at 1051. Santos also cites to *Wu v. City of New York*, 943 F. Supp. 581 (S.D.N.Y. 1996) in which the district court denied summary judgment on a claim of intentional infliction of emotional distress against New York City based on the acts of one of its police officers. The district court held:

> Intent is a question of fact under New York law. *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994), and an intentional infliction of emotional distress claim is viable against the City under a theory of respondeat superior liability for Officer Carson's actions. Because Carson was not a moving defendant, the parties have provided the Court with no discussion of Carson's intent. Yet the facts as depicted by Wu could support an inference of intentional misdeeds by Carson. It is therefore premature to resolve this claim on summary judgment.

*Wu*, 934 F. Supp. at 592.

Intentional infliction of emotional distress requires that the plaintiff plausibly allege "'extreme and outrageous conduct" and that the tortfeasor "intentionally or recklessly causes severe emotional distress to another...." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985). The cause of action "must be supported by allegations of conduct by the defendants "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Sheila C. v. Povich*, 11 A.D.3d 120, 130–31 (N.Y. App. Div. 1st Dep't 2004) (quoting *Murphy v American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983), *and* Restatement [Second] of Torts § 46, Comment d).

Santos' allegations for this cause of action merely state that Barber "seized, detained, arrested and prosecuted" her "without probable cause," that his initiation of criminal prosecution was "malicious and intended to harm" Santos, and that as a result, she "suffered injuries to her reputation, incurred legal expenses, suffered mental anguish, shame, emotional distress, humiliation, ridicule and embarrassment." Compl. ¶¶ 107–09. These allegations simply do not rise to the level of extreme and outrageous conduct necessary as a matter of law to plead a plausible claim for intentional infliction of emotional distress. This cause of action must be dismissed.

### *Eleventh Cause of Action — Prima Facie Tort*

New York law does not permit the use of a prima facie tort cause of action to act as a "'catch all' alternative for every cause of action which cannot stand on its own legs." *Freihofer v. Hearst Corp*, 65 N.Y.2d 135, 143 (quoting *Belsky v. Lowenthal,* 62 A.D.2d 319, 323 (N.Y. App. Div. 1st Dep't 1978), *aff'd* 47 N.Y.2d 820 (1979)) (other citation omitted). Santos frankly concedes that her cause of action for a prima facie tort "is duplicative of the assault and

battery claims and claims for negligence" and, therefore, she "consents to dismissal of the claim…without prejudice." For that reason, the Court will dismiss this cause of action, without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted as follows. Plaintiff's third cause of action (the *Monell* claim against the City of Rochester, Rochester Police Department, and Chief of Police Michael Ciminelli) is dismissed; her fourth cause of action (equal protection under article I, section 11 of the New York State Constitution) is dismissed; her seventh cause of action (negligence) is dismissed; her eighth cause of action (negligent hiring) is dismissed; her tenth cause of action (intentional infliction of her emotional distress) is dismissed; her ninth cause of action (punitive damages) is dismissed as against the City of Rochester, Rochester Police Department, and Chief of Police Michael Ciminelli; and her eleventh cause of action (prima facie tort) is dismissed. The Court will enter a separate order referring this case for pretrial matters to a United States Magistrate Judge.

DATED:   December 15, 2017
         Rochester, New York

                                                /s/ Charles J. Siragusa
                                                CHARLES J. SIRAGUSA
                                                United States District Judge